UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD, *et al.* )<br><br>Plaintiffs, )<br><br>v. )<br><br>U.S. DEPARTMENT OF HOMELAND )<br>SECURITY, *et al.*, )<br><br>Defendants. ) | Case No. 1:21-cv-00545 (TJK) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Secret Service's response makes clear that it has not conducted a reasonable search for January 6 records. The Court should grant summary judgment to Plaintiffs and order the specific additional searches described herein.

## I.    ARGUMENT

### A.    The Rules permit Plaintiffs' motion and there is good reason to consider it now.

Relying on three district court orders spread over a 23-year time period, Secret Service argues that the Court should not entertain Plaintiffs' motion for partial summary judgment because of a "standard practice in this district." Def. Resp., ECF No. 30, at 5. But this district has no local rule prohibiting partial summary judgment in a FOIA case, *see* LCvR 7, and the Federal Rules expressly allow for partial summary judgment motions. Fed. R. Civ. P. 56(b); *see also* Pl. Memo., ECF No. 29, at 2. The Court can and should consider Plaintiffs' motion: the search is completed (SOF, ECF No. 30-2, ¶ 14), Secret Service identifies no way in which another agency's search or its own exemption claims impact or are impacted by Plaintiffs' motion (Def. Resp. at 5-7), it does not claim an inability to "present facts essential to justify its opposition" (Fed. R. Civ. P. 56(d)), it

acknowledged the urgency of informing the public on the issues implicated by the requested January 6 records in granting expedited processing (SOF ¶ 4), and the records may even include thought-to-be deleted text messages sought by Congress in the January 6 investigation (Cuffari Letter, ECF No. 29-2; Rowe Letter, ECF No. 29-3).  Plaintiffs have not filed and have no intention of filing any other partial summary judgment motions in this case and would do so only if good reason exists in the future.  *See* Def. Resp. at 6.

Nor are Defendants' cases persuasive.  *Kooritzky v. McNary* contains no analysis or citation to any authority for its claim that a FOIA requester cannot move for summary judgment until an agency files search declarations and a *Vaughn* index. No. CIV. A. 92-1270-LFO, 1993 WL 79519, at *1 (D.D.C. Mar. 11, 1993).  *Knowledge Ecology International v. Department of Health and Human Services* is based on a specific standing order that this Court has not adopted, and in any event, that allows for partial summary judgment "for good reason." Order Setting Production Schedule at 4, No. 1:20-cv-02986-KBJ, ECF No. 17 (D.D.C. Feb. 11, 2021).  And *Republican National Committee v. Department of State* entertained the requester's partial summary judgment motion on an exemption claim before production was completed, ultimately concluding based on the specifics of the case it made more sense for all comparable materials first to be processed so as to develop a more thorough factual record.  No. 16-486, 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016).  None of these cases counsel against a partial summary judgment motion here on the adequacy of Secret Service's search.  *See also Gannett Satellite Info. Network v. DOJ*, 22-cv-475-BAH, ECF No. 10 (requesting bifurcated summary judgment on agency's Exemption 3 claim).

The Court should address this single, discreet, and ready-to-resolve issue on a matter of significant public interest.

**B.**     **The Court should grant summary judgment to Plaintiffs on the adequacy of Secret Service's search.**

**1.**     **Secret Service has implausibly processed no text messages.**

Plaintiffs agree that the reasonableness of a search is not judged solely by its results.  *See* Def. Resp. at 8.  But as explained in the remaining unquoted portion of *Montgomery* on which Secret Service relies (*id.*), "a positive indication of overlooked materials can lead a court to determine the search was inadequate."  *Montgomery v. IRS*, 40 F.4th 702, 715 (D.C. Cir. 2022) (cleaned up, quoting in part *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999)).

Here, Secret Service admits that the request sought text messages and none were produced. SOF ¶¶ 2, 13.  It does not deny that Secret Service officials sent or received text messages regarding the events of January 6, and its vague claim that Plaintiffs' evidence to that effect "does not support the alleged fact" fails to controvert Plaintiffs' statement.   SOF ¶ 6; LCvR 7(h)(1) (facts not properly controverted are assumed to be admitted); *Shapiro v. DOJ,* 507 F. Supp. 3d 283, 304 (D.D.C. 2020) (deeming facts admitted where agency's "counter statement makes no effort to explain why Plaintiffs' asserted facts are unsupported and fails to cite to any controverting evidence").  And in any event, the evidence Plaintiffs cited establishes this fact.  Cuffari Letter (Inspector General letter to Congress describing the existence of "many U.S. Secret Service (USSS) text messages, from January 5 and 6, 2021," which "were erased as part of a device-replacement program"); *see* SOF ¶ 6 (citing Cuffari Letter).

Finally, Plaintiffs do not rely solely on the lack of text messages as evidence that the search was deficient.  Rather, as explained in the remainder of this brief, Plaintiffs also identify specific problems with the search that should be remedied through specific supplemental searches—the very things Secret Service admits are relevant to determining the adequacy of its search.  *See* Def.

Resp. at 8 (arguing that Plaintiffs must identify specific repositories that should have been searched or positive indications that additional records exist elsewhere).

> **2.    Secret Service's superseding searches were improperly narrow under either side's interpretation of "Front Office."**

Secret Service has now explained that by January 16, 2021, it collected responsive records from its Protective Intelligence Division.  Tyrrell Decl., ECF No. 30-1, ¶ 5.  Between January 19 and February 10, 2021, Secret Service conducted searches and collections of additional unidentified repositories.  *Id.*  The device migration that resulted in the loss of Secret Service January 6 text messages occurred January 27 through April 1, 2021.  Cuffari Letter; Rowe Letter at 3; *see also* SOF ¶¶ 7, 9.  Thus, some (and perhaps all) records potentially responsive to the request were collected before the migration even began, and all of the pre-suit collections were completed, at the latest, three weeks into the nine-week migration process.  Plaintiffs refer to these collectively as the "January collections."

After Plaintiffs agreed to narrow the scope of the request in June 2021, Secret Service conducted new "superseding" searches and collections beginning in July.  Tyrrell Decl. at ¶ 8. Those searches did not begin until after the migration and any resulting deletions were complete, and they did not include the results of the January collections.  *Id.*  Secret Service has not explained why these new searches were necessary (*i.e.*, why did it not simply narrow down the results of the January collections to only the reduced set of custodians?) or why it did not include the results of the January collections again in July, in light of the intervening device migration and deletion.  *Id.*

To be clear, Plaintiffs do not discuss the January collections so as to judge their reasonableness as the ultimate issue in this motion.  *See* Def. Resp. at 7.  Rather, there are sufficient indications that responsive records deleted as part of the device migration had previously been collected as part of the January collections but were not included in the superseding searches, and

Secret Service has offered no justification for its failure to include them.  The Court should therefore order Secret Service to search the January collections for responsive records.

### 3. Secret Service's interpretation of "Front Office" is unreasonably narrow.

In addition to searching inadequate document repositories, Secret Service processed records from an inadequate set of document custodians.  Secret Service is correct that the request was narrowed to the "Front Office." *See* Def. Resp. at 9.  But Secret Service has not identified the basis for its interpretation of "Front Office," Tyrrell Decl. at 7, its website does not define or even use the term "Front Office," and it is more reasonably interpreted as the 18 people identified as Leadership and Executive Staff, as distinguished from Field Offices.  Secret Service Website, *available at* https://www.secretservice.gov/; Secret Service Website, Leadership, *available at* https://www.secretservice.gov/about/leadership;  Secret Service Website, Field Offices, *available at* https://www.secretservice.gov/contact/field-offices; *see also Dillon v. DOJ*, 444 F. Supp. 3d 67, 84 (D.D.C. 2020) (requiring requests to be liberally construed); *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995)) (same).  And if the parties did not have a shared understanding of "Front Office," there was no agreement and the original scope of the request still applies (which Plaintiffs hereby limit to the 18 positions listed as Leadership and Executive Staff on the Secret Service's website).

### C. Secret Service's searches did not include the fruits of its efforts to recover text messages that were deleted as part of the device migration.

As explained in its own letter to Congress, Secret Service has been engaged in "extensive efforts to further assess whether any relevant text messages sent or received by 24 individuals identified by the DHS OIG were lost due to the Intune migration and, if so, whether such texts are recoverable," including review of metadata, forensic examinations, and interviews of Secret Service officials.  Rowe Letter at 2.  Secret Service does not claim to have incorporated these

efforts into its search here, *see* Tyrrell Declaration, and therefore, its search was inadequate for this additional reason as well.  Similarly, Secret Service states that as part of the migration, employees "were given instructions on how to save information that they were obligated or desired to preserve so that no pertinent data or federal records would be lost," but there is no indication that the results of any such efforts were searched.  SOF ¶ 8 (response citing Rowe Letter at 1).

**D.     The party bearing the burden of proof must come forward with that proof in response to a summary judgment motion.**

Finally, Secret Service states that "the Tyrrell declaration is not the type of reasonably detailed affidavit describing the scope of the agency's search that an agency must provide when it moves for summary judgment."  Def. Resp. at 8 (cleaned up).  According to Secret Service, citing a single district court case, such a declaration is not required until an agency files for summary judgment.  *Id.* (citing *Pinson v. DOJ*, 145 F. Supp. 3d 1, 12 (D.D.C. 2015)).  But *Pinson* holds no such thing: it merely sets forth the well-known obligation for agency declarations at summary judgment, and while it is true that the declaration in that case was offered in support of an agency's motion for summary judgment, the case did not address (nor could it) what must be provided in response to a requester's summary judgment motion when the agency has not filed its own motion. 145 F. Supp. 3d at 12.

Under the Federal Rules of Civil Procedure, a summary judgment nonmovant bearing the burden of proof must come forward with sufficient evidence to meet its burden.  *Eddington v. Dep't of Def.*, 35 F.4th 833, 836-37 (D.C. Cir. 2022); *see* Pl. Memo. at 2.  Secret Service agrees that it bears the burden of proving a reasonable search.  Def. Resp. at 5.  As a result, its response to Plaintiffs' motion was Secret Service's time to "put up or shut up."  *Nessar v. D.C.*, 962 F. Supp. 2d 234, 242 (D.D.C. 2013) (quoting *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[S]ummary judgment is the put up or shut up moment in a lawsuit, when a party must show what

- 6 -

evidence it has that would convince a trier of fact to accept its version of the events.")).  Thus, Secret Service cannot rely on the fact that it elected not to move for summary judgment as a basis to relieve itself of the obligation, absent invocation of Rule 56(d) (addressing circumstances in which facts are not available to the summary judgment non-movant), to come forward with sufficient evidence to meet its burden of proof.

Ultimately, however, this need not matter.  It is sufficiently clear on the current record that Secret Service's search included inadequate repositories and custodians and did not incorporate the results of its ongoing efforts elsewhere to recover deleted or individually preserved text messages.  Thus, even if Secret Service's interpretation of the summary judgment rules was correct, the Court should still grant summary judgment to Plaintiffs: there is no genuine dispute of material fact that Secret Service did not conduct a reasonable search as required.

## II.      CONCLUSION

The Court should grant summary judgment to Plaintiffs on the adequacy of Secret Service's search and order Secret Service to (1) conduct a supplemental search for all 18 positions listed on the Leadership page of its website, (2) search the January 2021 collections, and (3) incorporate into its supplemental search the results of its efforts to recover deleted text messages referenced in the July 19, 2022 Rowe Letter to Congress and any individual preservations made as part of the device migration.

Dated:  September 16, 2022

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiffs

Matthew Topic, DC Bar No. IL0037

Josh Loevy, DC Bar No. IL0105
Merrick Wayne, DC Bar No. IL0058
Shelley Geiszler, DC Bar No. IL0087
(E-Mail:  foia@loevy.com)
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, Illinois 60607
Tel.: (312) 243-5900
Fax: (312) 243-5902